UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 19-cr-00250-PB |
| v. ) | |
| ) | |
| CRYSTAL HARDY ET AL. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE UNDER RULES 401 - 404**

The United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, responds as follows to the Defendant's Motion to Exclude Evidence Under Federal Rules of Evidence 401-404 (ECF No. 66). Contrary to Defendant's assertion, the evidence described in the Government's 404(b) notice is admissible. Much of the evidence in question is intrinsic to the case, and to the extent it is not, it has special relevance—showing that Defendants had motive and opportunity to enter the criminal conspiracy, and that their entrance into the conspiracy was based on knowledge and lacked mistake, among other reasons. The evidence is not so shocking, heinous or likely to inflame the jury that its probative value is outweighed—let alone "substantially" outweighed, as exclusion under Rule 403 requires—by the danger of unfair prejudice. Accordingly, Defendant's motion should be denied.

**I.     LEGAL STANDARD**

Rule 404(b) does not exclude evidence that is intrinsic to the crimes charged: Rule 404(b) excludes only extrinsic evidence—"evidence of other crimes, wrongs, or acts"—the probative value of which depends exclusively upon a "forbidden inference of criminal propensity." *United States v. Manning*, 79 F.3d 212, 218 (1st Cir. 1996). Evidence that is intrinsic to the crime for which the defendant is on trial, accordingly, is not governed by Rule 404(b). *Id.*; *United States v.*

*Tutiven,* 40 F.3d 1, 5 (1st Cir.1994) ("The cases are legion in which similar intrinsic circumstantial evidence has been admitted without occasioning either challenge or analysis under Rule 404(b)."); *United States* v. *Mare*, 668 F.3d 35, 39 (1st Cir. 2012) (evidence concerning matters intrinsic to the crime charged does not trigger analysis under rule 404(b)). Such "intrinsic" evidence includes, but is not limited to, "the necessary description of the events leading up to" the charged crime.  *United States* v. *Souza*, 749 F.3d 74, 84 & n.2 (1st Cir. 2014); *see also United States* v. *Green*, 617 F.3d 233, 247 (3d Cir. 2010) (stating that evidence is admissible for purpose of "allowing the jury to understand the circumstances surrounding the charged crime" or "completing the story").

If the evidence is intrinsic to the case, a defendant's motion to exclude the evidence on Rule 404(b) grounds must be denied: Only if the Court holds that the evidence is not intrinsic to the case should it proceed to engage in Rule 404(b) analysis.   The First Circuit applies a two-part test to determine the admissibility of evidence under Rule 404(b). "First, the trial judge must determine whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question," *United States* v. *Aguilar-Aranceta*, 58 F.3d 796, 798 (1st Cir. 1995), such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2); *United States* v. *Robles-Alvarez*, 874 F.3d 46, 51 (1st Cir. 2017).   If this "special relevance" is established, the court must then apply Rule 403 "to determine whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice.'" *Aguilar-Aranceta*, 58 F.3d at 798 (quoting Fed. R. Evid. 403). "By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided."   *United*

2

*States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989).   The phrase "unfair prejudice" is "reserved for evidence that invites the jury to render a verdict on an improper emotional basis or for evidence that is shocking or heinous and likely to inflame the jury." *United States v. Soto*, 799 F.3d 68, 90 (1st Cir. 2015) (internal quotations omitted).

**II.     ARGUMENT**

Much of the evidence to which Defendant Crystal Hardy objects—for example, Christopher Kelly's possession of body armor and firearms during the timeframe of the criminal conspiracy—is intrinsic to the crime charged, and cannot be excluded under Rule 404(b). The fact that the Government disclosed this evidence in its Rule 404(b) notice does not prove otherwise.   The Government explicitly stated in the notice that it was disclosing such evidence because such evidence is "arguably" subject to Rule 404(b).   *See* Exhibit A to Defendant's Motion, the Government's Rule 404(b) Notice.   The Government's position is that it is not.

Even if the Court were to find that Rule 404(b) governs the evidence in question, however, the Court should admit the evidence pursuant to traditional Rule 404(b) analysis.   The evidence in question has "special relevance," because, as explained in more detail below, it shows that Defendants had motive and opportunity to enter the criminal conspiracy, their entrance into the conspiracy was based on their knowledge and lacked mistake, among other purposes besides showing propensity to commit the crimes charged.   Furthermore, the evidence in question does not engender "unfair prejudice."   The evidence here is not "shocking or heinous and likely to inflame the jury."   *Soto*, 799 F.3d at 90.   Because the probative value of the evidence is not outweighed at all, let alone "substantially" by unfair prejudice (as the law requires for exclusion), it should be admitted.

### A. Evidence of Wage and Unemployment Records

#### 1. The Evidence of Wage and Unemployment Records is Intrinsic to the Crime Charged.

The Government intends to introduce tax and wage records (from the Internal Revenue Service and the NH Division of Employment Security) from 2012 to 2020 as well as unemployment benefits for both Defendants for the years 2009-2020 in order to show that Defendants did not have sufficient legitimate sources of income to account for the large amounts of cash (roughly $27,000) that law enforcement discovered in Ms. Hardy's vehicle. "It is common ground that the possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking is generally relevant and admissible." *United States v. Newton*, 891 F.2d 944, 948 (1st Cir. 1989); *United States v. Figueroa*, 976 F.2d 1446, 1453–55 (1st Cir. 1992)("Evidence that the defendant possessed or controlled substantial sums of money from unexplained sources is relevant in a prosecution for drug trafficking."); *see United States v. Newton,* 891 F.2d 944, 948 (1st Cir.1989) (possession of large amounts of unexplained cash relevant in connection with drug trafficking); *United States v. Ariza–Ibarra,* 605 F.2d 1216, 1224–25 (1st Cir.1979) (same). The wage and unemployment records show that the cash in the car is from "unexplained" sources as to both Defendants, therefore directly supporting the drug distribution element of the charged conspiracy. *See id.*; *United States v. Romero-Carrion*, 54 F.3d 15, 17 (1st Cir. 1995) (defendant's unemployment at time of arrest coupled with substantial cash provided evidence of cocaine conspiracy charge). Since the evidence is intrinsic to the charged conspiracy, it is not subject to exclusion on 404(b) grounds.

### 2. The Evidence Regarding Wage and Unemployment Records Has Special Relevance and Is Not Unfairly Prejudicial.

Even if the Court finds the wage and unemployment evidence is not intrinsic to the case, the Court should admit it under traditional Rule 404(b) analysis.  In addition to its relevance to showing that drug distribution is the likely source of the money instead of legitimate employment, the wage and employment records has the "special relevance" of establishing Defendants' motive to enter into the criminal conspiracy—as a way of making money—in addition to "another purpose": preempting any potential argument from defense that the money can be explained by Defendants' employment.

The evidence also meets the second and final element for admissibility under a Rule 404(b) analysis: Defendant has not shown that, under Rule 403, the probative value of the disputed evidence is "substantially outweighed" by a danger of unfair prejudice.  Defendants argue that thousands of people in NH will have experienced similar periods of unemployment from 2009 to 2020, while also arguing that jurors would use the information to conclude that the Defendants are people of bad character.  These two arguments contradict one another: it is unclear why people would conclude bad character from someone's period of unemployment if significant percentages of the population of the state have experienced it.  In any event, Defendant does not show that a jury is more likely to render a verdict based on emotion in light of the wage and unemployment records instead of the legitimate purpose it serves in supporting the Government's case.  Financial information of this type is simply not the type of "shocking or heinous" evidence "likely to inflame the jury" that courts typically find to be "unfairly prejudicial." *Cf. United States v. Nazario-Quinones*, 442 F. Supp. 3d 504, 509–10 (D.P.R. 2020)

5

(admitting 404(b) evidence of defendants' withholding of municipal employees' wages over defendant's objection on 403 grounds, since it did not invite the jury to render a verdict on an improper emotional basis) (citing *Soto*, 799 F.3d at 90).   Since it has special relevance and is not substantially outweighed by unfair prejudice, the evidence should be admitted.   *See id.*; *United States v. Romero-Lopez*, 695 F.3d 17, 22–24 (1st Cir. 2012) (finding that district court properly admitted tax records introduced through IRS agent for "another purpose" under Rule 404(b) because they showed that large sums of unexplained money were derived from illegal activity, and "the government was entitled to refute any possible argument" that the funds were from legitimate sources; probative value not outweighed by unfair prejudice); *Figueroa*, 976 F.2d at 1453–55 (upholding introduction of evidence that appellant was on welfare under 404(b) analysis because it served "another purpose": corroborating witness testimony about the charged conspiracy and showing wealth was unexplained and unreported to welfare agency; probative value not substantially outweighed by unfair prejudice).

### B. Christopher Kelly's Drug Sales Before the Alleged Conspiracy

The Government has further reviewed the evidence in its case in chief subsequent to the in-person hearing today at which Defendants motions *in limine* were discussed, and no longer intends to introduce evidence of Mr. Kelly's drug sales prior to 2019.   As a result, Defendant's argument is moot.

In the event that the exact timing of a drug sale is put in question by the defense to show that it occurred close in time to, but precedes, 2019, the Government contends that should not render the evidence of that drug sale inadmissible.   "In establishing the existence of a conspiracy, the government is not bound by approximate start or end-dates listed in the

6

indictment; the scope of the conspiracy may extend beyond an approximate date." *United States v. Mangual-Santiago*, 562 F.3d 411, 428 (1st Cir. 2009); *see United States v. Paredes–Rodriguez,* 160 F.3d 49, 56 (1st Cir.1998) ("[T]he reference to approximate dates in an indictment is not binding and thus the scope of the indictment may cover prior events."). The indictment in this case charges that Defendants engaged in a conspiracy to distribute drugs from "in or around" January 2019 to December 2019. Therefore, drug sales that precede but are close in time to January 2019 are still intrinsic to the charged conspiracy, and are not subject to 404(b) analysis. Such testimony is also intrinsic because it provides context for the charged conspiracy. *See Souza*, 749 F.3d at 84 & n.2 (evidence providing background to a charged crime is not subject to 404(b) analysis); *Green*, 617 F.3d at 247 (evidence is intrinsic if it allows jury to understand the circumstances surrounding the charged crime or completes the story). Furthermore, even if subject to 404(b) analysis, "evidence of other bad acts ... can be admitted to explain the background, formation, and development of the illegal relationship." *United States v. Green,* 698 F.3d 48, 55 (1st Cir.2012) (quoting *United States v. Escobar-de Jesus,* 187 F.3d 148, 169 (1st Cir.1999)). Therefore, evidence of drug transactions in which Hardy and Kelly were both involved, even if preceding 2019, are admissible for "another purpose" under Rule 404(b). *Cf. United States v. Balthazard,* 360 F.3d 309, 317–18 (1st Cir.2004) (finding evidence of a drug transaction admissible where the government failed to prove that the transaction occurred during the time frame of the conspiracy, because it was evidence of the "background, formation, and development of the illegal relationship" (citation and internal quotation marks omitted)).

### C. Fentanyl Possession and Sale

The Government has further reviewed the evidence in its case in chief subsequent to the in-person hearing today, and no longer intends to introduce evidence of Mr. Kelly's fentanyl sales, or other fentanyl possession, with one exception: evidence of Mr. Kelly's possession of the specific bag of fentanyl (roughly 5.7 grams) that law enforcement discovered in Ms. Hardy's vehicle pursuant to the inventory search.

The government intends to introduce witness testimony that Mr. Kelly admitted to law enforcement that he left 1.5 grams of fentanyl in Ms. Hardy's vehicle. The fentanyl discovered in the inventory search was located inside the same bag in which the methamphetamine, digital scale, and measuring tools were found. This was the only fentanyl discovered in the vehicle. The bag of fentanyl and Mr. Kelly's admission therefore have the special relevance of showing Mr. Kelly's knowledge of the contents of the bag, and therefore, evince his knowledge of the tools of Defendants' drug distribution.

The bag of fentanyl is unique in that it is the only thing in that bag to which Mr. Kelly admits having knowledge. Thus, the admission of this evidence passes the Rule 403 balancing test that the First Circuit urged in *United States v. Henry*, 848 F.3d 1, 9 (1st Cir. 2017): the evidence has been offered to prove an issue that is in genuine dispute (Defendant Kelly's knowledge of the criminal conspiracy), and the evidentiary point cannot be made with other evidence that does not present a risk of unfair prejudice, due to the unique nature of the fentanyl. *Id.* (explaining that such considerations should be taken into account under a 404(b) analysis). Furthermore, any risk of unfair prejudice does not substantially outweigh the probative value of this evidence. The possession of a relatively minor amount of fentanyl in a drug conspiracy

case in which large quantities of methamphetamine will be discussed is not so shocking, heinous, or likely to inflame the jury that it will lead to unfair prejudice.  To the extent that there is such a risk, it can easily be mitigated with a limiting instruction.

Furthermore, it would be difficult to extricate all reference to that specific bag of fentanyl from the case without presenting an incomplete picture to the jury.  The discovery of the fentanyl in the bag in the truck prompted Tilton law enforcement to apply for the search warrant that resulted in the seizure of a drug ledger, cash, and other evidence of drug distribution.  The body camera footage of the traffic stop that resulted in the seizure of evidence of the criminal activity in this case contains footage of the discovery of the fentanyl, which Sergeant Kydd-Keeler clearly announces and holds up on the video. It is the discovery of the "tan powder" that he announces that causes him to stop the inventory search, and apply for a search warrant.  The government also seeks to introduce photos that Sergeant Kydd Keeler of Tilton Police took of the bag and its contents, and those photos show both the methamphetamine and the fentanyl, as well as the scale and measuring tools.  Excising the body camera footage at the critical moment when Sergeant Kydd Keeler opens the bag, and redacting the photos he took, would literally leave an "incomplete picture" of the relevant evidence for the jury.  *Cf. United States* v. *Souza*, 749 F.3d 74, 84 & n.2 (1st Cir. 2014) (intrinsic evidence includes necessary events leading up to the crime charged);  *United States* v. *Green*, 617 F.3d 233, 247 (3d Cir. 2010) (evidence admissible if admitted for purpose of "allowing the jury to understand the circumstances surrounding the charged crime" or "completing the story").

### D. Possession of Body Armor and Firearms

#### 1. Evidence of Possession of Body Armor and Firearms Is Intrinsic to the Crimes Charged.

The Government seeks to introduce evidence that Mr. Kelly possessed body armor and handguns discovered in a backpack in Ms. Hardy's vehicle. The handguns found in that backpack are the very guns he is charged with possessing in Count 2 of the indictment; therefore, those guns are intrinsic to the crime. Testimony from witnesses who saw him with handguns fittinghe description of those guns is also intrinsic to the crime, since it evidences his possession of the guns.

The body armor is also intrinsic evidence in the crime, since it has indicia of being male body armor, and was found in the same backpack as the guns in question, along with statements of account and prescription medications in Mr. Kelly's name, all of which evidence Mr. Kelly's possession of the guns in question.

The evidence of possession of body armor, the guns found in the backpack, and Mr. Kelly's possession of other firearms during drug transactions is intrinsic to the conspiracy charge (Count 1) in the case as against both Defendants. The Government intends to present testimony and evidence of Mr. Kelly's possession of firearms and body armor to prove that Mr. Kelly's role in the conspiracy involved him offering protection (from physical and economic harm) to Ms. Hardy. Mr. Kelly's ownership of the guns he is charged with possessing, as well as other firearms and body armor, all show that he was the "muscle" in the conspiracy. Evidence that he carried weapons during drug transactions provides direct evidence of the conspiracy as to both parties, since Mr. Kelly provided the protection and Ms. Hardy accepted that protection.

### 2. Evidence of Possession of Body Armor and Firearms Has Special Relevance and Is Not Unfairly Prejudicial.

Evidence of Defendants' firearm possession and possession of body armor is also admissible under traditional Rule 404(b) analysis. For Mr. Kelly, possession of the firearms and body armor found in the backpack, as well as other firearms, has the special relevance of showing his opportunity to enter the criminal conspiracy: he had access to guns, and could therefore provide the protection Ms. Hardy wanted. Similarly, it shows his knowledge and lack of mistake in entering the conspiracy: he knew he was providing this protection to Ms. Hardy. This is further evidenced by a statement that Mr. Kelly made to law enforcement that the Government seeks to introduce at trial: Ms. Hardy did not need her own guns anymore, because she had him for protection.

Mr. Kelly's possession of firearms also has the special relevance of showing Ms. Hardy's motive for entering into the conspiracy, since she wanted his protection. The Government seeks to introduce witness testimony that Ms. Hardy carried a gun in her purse at one time, and stated she did so to protect herself in case she was robbed. The Government would, however, agree to exclude this statement if Defense counsel agrees not to ask questions requiring discussion of this observation and Ms. Hardy's statement to the witness in a truthful response.

Contrary to Defendant Hardy's assertion that it has no relevance to the case, Mr. Kelly's and Ms. Hardy's gun ownership, therefore, is direct proof of the conspiracy. "[E]vidence of firearms is routinely admissible in drug trafficking cases, as is evidence of drug trafficking in firearms cases." *United States* v. *Matthews*, 856 F. Supp. 2d 229, 234 (D. Me. 2012)(citing *United States v. Torres–Rosario,* 658 F.3d 110, 114 (1st Cir.2011) (affirming admission of

11

evidence of uncharged drug crime in firearms trial, noting that such evidence may be relevant to motive).  The gun possession should be admitted for the purposes stated above.

Even if it were not directly relevant to the criminal conspiracy charge (which it is), evidence of Mr. Kelly's ownership of firearms of similar nature to those found in the vehicle would still be admissible as evidence of the felon-in-possession charge.  In addition to testimony that Mr. Kelly possessed guns that fit the description of the guns found in the vehicle, which the Government intends to elicit, testimony about Mr. Kelly's possession of other handguns is directly relevant to the felon-in-possession charge, since it shows his intent in owning guns of the type in question.  In *United States v. Jordan*, 121 F.3d 695 (1st Cir. 1997), the First Circuit upheld the district court's admission, in a felon-in-possession case, that Defendant owned other guns which were of the type that he was charged with possessing. The First Circuit found that such evidence was of special relevance to proving a main issue in the case: whether Defendant possessed the semi-automatic gun found at the 8scene of the crime.  The First Circuit Court found that "while the evidence is undeniably prejudicial," the District Court did not abuse discretion in finding that "did not outweigh its probative value." *Id.* at *1.  Here, the Court should find that Kelly's ownership of other handguns is probative of the issue of Mr. Kelly's ownership of the guns in question, and his involvement in the criminal conspiracy to distribute methamphetamine.  The Court should admit the evidence.  *See id.*; *United States* v. *Rose*, 104 F.3d 1408, 1413 (1st Cir. 1997) (admitting evidence of defendant's gun ownership, including photos of  him holding guns and his possession of a pistol case, reasoning that "items linking [defendant] to pistols tended to corroborate [government witness'] testimony that Rose was a participant in the conspiracy and had possessed the [pistol in question]").

12

**III. CONCLUSION**

In light of the foregoing, Defendant's motion should be denied, and the evidence in the Government's 404(b) notice, as limited in the above-described ways, should be admitted.

Dated: February 25, 2021

Respectfully submitted,

SCOTT W. MURRAY
United States Attorney

By:  /s/ Aaron G. Gingrande
Aaron G. Gingrande
Debra M. Walsh
Assistant U.S. Attorneys
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
(603) 225-1552