*<u>NO COPY OF THIS TRANSCRIPT MAY BE COPIED PRIOR TO MAY 16, 2022</u>

```
                 UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW HAMPSHIRE

* * * * * * * * * * * * * * * * * *
                                   *
                                   *
UNITED STATES OF AMERICA           *
                                   *
              v.                   *   1:19-cr-250-PB-1
                                   *
CRYSTAL HARDY                      *
_____*
                                   *
UNITED STATES OF AMERICA           *   1:19-cr-250-PB-2
                                   *   January 12, 2022
              v.                   *   2:05 p.m.
                                   *
CHRISTOPHER KELLY                  *
                                   *
* * * * * * * * * * * * * * * * * *
```

<u>TRANSCRIPT OF MOTION HEARING</u>
<u>BEFORE THE HONORABLE PAUL J. BARBADORO</u>

<u>Appearances</u>:

| | |
|---|---|
| <u>For the Government</u>: | Debra M. Walsh, AUSA<br>United States Attorney's Office |
| <u>For the Defendant,</u><br><u>Crystal Hardy</u>: | Kathleen Hickey, Esq.<br>Brennan Lenehan Iacopino & Hickey |
| <u>For the Defendant,</u><br><u>Christopher Kelly</u>: | Donna J. Brown, Esq.<br>Wadleigh, Starr & Peters PLLC |
| <u>Court Reporter</u>: | Liza W. Dubois, RMR, CRR<br>Official Court Reporter<br>United States District Court<br>55 Pleasant Street<br>Concord, New Hampshire 03301<br>(603)225-1442 |

P R O C E E D I N G S

THE CLERK: This court is in session and has for consideration a motion hearing in United States of America vs. Christopher Kelly and Crystal Hardy, 19-cr-250-PB.

THE COURT: I want to be clear. I'm holding this on short notice because the defendants are in custody and if I were to grant the relief that the government wants me to grant, that would result in the defendants' immediate dismissal and I certainly don't want to let one day go by without addressing this issue, given that it potentially implicates someone's freedom.

I didn't think I could get the defendants on today given the short notice, so I wanted to proceed initially with counsel. Of course, if anyone wants me to defer action until the defendants can be present on the hearing, I'll defer action, but I won't be able to do that until tomorrow at the earliest.

Ms. Walsh, can you refresh my memory as to what this witness's testimony was?

MS. WALSH: Yes, your Honor.

This witness testified that he overheard a phone call between Ms. Hardy and someone else. During that phone call, he overheard Crystal Hardy say words to the effect that she'd been stopped by the police, they had taken all her money, and she needed help.

1       Later that same day, the witness testified that he
2  was standing in his mother's home, looking out the window, and
3  he observed a truck pull up to his mother's driveway.  He
4  recognized the truck to be that of Jared Stottlar.  He observed
5  Jared Stottlar give Crystal Hardy a package.  Hardy brought it
6  into the home where this witness, Ms. Hardy, and Mr. Kelly went
7  into this witness's bedroom, where the three of them proceeded
8  to break it down into smaller amounts for further distribution,
9  and that he and Mr. Kelly ingested some of the methamphetamine.
10 And he testified that this occurred around the time of the stop
11 of April 5th, 2019.
12           THE COURT:  What portion of the testimony do you now
13 agree is false?
14           MS. WALSH:  That it occurred around April 5th, 2019.
15           THE COURT:  What do you currently believe was the
16 correct date?
17           MS. WALSH:  We think that it likely occurred in the
18 summer of 2019.
19           THE COURT:  So a few months later?
20           MS. WALSH:  Correct.
21           THE COURT:  Okay.  And your position is that you do
22 not believe that the witness perjured himself; rather, he
23 simply got the dates wrong.  Is that your position?
24           MS. WALSH:  Yes, your Honor.
25           THE COURT:  And your position is the government

didn't knowingly use perjured testimony here.  Is that your position?

MS. WALSH:  Yes, your Honor.

THE COURT:  Okay.  So I'm having some trouble in understanding why you are seeking the particular relief that you are seeking.  Based solely on your motion, all that I can conclude is that you have a witness who you say got the date wrong about a particular event, right?

MS. WALSH:  Correct.  But he -- we do not think that Jason MacLeod is now a viable witness.

THE COURT:  Yeah, we'll get to that in a minute.

MS. WALSH:  Okay.

THE COURT:  How did you discover this -- this mistake?

MS. WALSH:  Attorney Brown notified us that she had contacted Strafford County House of Correction and learned that the defendant was in custody from March 4th through June 5th, 2019.  So he, therefore, could not have witnessed the event.

THE COURT:  Okay.  So help me understand why you are asking me to vacate the convictions and dismiss the charges against the defendants with prejudice.

As I understand the relevant law, if, based on all that you say happened, you have a -- a situation in which there is newly discovered evidence that a government witness got the date wrong and the standard that I would have to use to

evaluate a request for a new trial in that kind of case is set out in *United States against Gonzalez-Gonzalez*, reported at 258 F.3d 16, and that requires a conclusion that the new evidence will probably result in an acquittal upon retrial.

That standard is, of course, very different than the standard that a court uses when considering a claim that the government has knowingly used perjured testimony. In that kind of a case, as the Court notes in *Gonzalez-Gonzalez*, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In neither case is dismissal with prejudice required, even in the case in which the government knowingly uses perjured testimony, except in unusual circumstances. The standard would be to vacate the conviction and remand the case for a new trial.

So based solely on your motion, there's no allegation that the defendant perjured himself, there's -- the witness perjured himself; there's no allegation that the government knowingly allowed perjured testimony; and in that kind of a case, the -- the standard for granting a new trial is fairly difficult to meet. Again, you'd have to show that the new evidence will probably result in an acquittal on retrial.

As I remember the evidence in the case -- and I haven't looked back at it, so you will have a better memory than I -- this was a case in which they discovered drugs, a

```
 1   substantial amount of cash, and the gun in the car, didn't
 2   they?
 3          MS. WALSH:  That's correct.  They -- they discovered
 4   approximately, my recollection is, six grams of meth, five
 5   grams of fentanyl, two guns, and $28,000.
 6          THE COURT:  Right.  And there were also two other
 7   cooperators whose testimony is unaffected by this witness's
 8   false testimony, right?
 9          MS. WALSH:  No, I don't think -- I don't think the
10   other two witnesses are impacted by MacLeod's testimony.
11          THE COURT:  Right.  So --
12          MS. WALSH:  The government --
13          THE COURT:  Wait a minute.
14          You have this -- so you have this seizure of two
15   guns with the defendants in the car, 28,000 in cash, a -- and
16   drugs in the car and two other cooperating witnesses.
17          And are you telling me that it's your judgment that
18   if you -- unless you can call this witness whose testimony you
19   say is compromised that that will probably result in an
20   acquittal?
21          MS. WALSH:  Yes.  And I if may, I'll explain why.
22          THE COURT:  Okay.  Why?  Yeah.
23          MS. WALSH:  So we charged them with conspiracy and
24   we thought that J.M.'s testimony was material because he gave
25   us something that the other two individuals could not give us
```

in that he gave us testimony that both Christopher Kelly and Crystal Hardy engaged in the breaking down of drugs for further distribution.

Ms. Fuller, who testified, did not testify about -- anything about Christopher Kelly. She did not buy drugs from Christopher Kelly. She bought drugs from Ms. Hardy.

Mr. Hillsgrove testified that he did buy drugs on various occasions from Chris Kelly and that at one point he and Chris talked about a price and Ms. Hardy talked about a different price. So we think that Mr. Hillsgrove's testimony is important, but it doesn't get us across the finish line for charging a conspiracy to agree to possess with the intent to sell a controlled substance because we think the amount of drugs that they had on them are personal use drugs.

So we're -- we just felt that we needed MacLeod's testimony and that it was material and without it, we would not retry the case.

And that was the right thing to do because even though Mr. MacLeod -- we do not believe he committed perjury, but he can -- he does not remember the date. We've deduced that it happened in the summer of 2019 because in the discovery there was another individual who was not a witness at trial who said he -- he was not cooperating -- who said he delivered a pound of methamphetamine to Crystal Hardy that summer. So we're deducing that that's when Mr. MacLeod witnessed the

```
 1  event.
 2              So we do not think he committed perjury, but
 3  Mr. MacLeod, as he did testify, is not good with dates, so
 4  he's -- he's just not a viable witness anymore.
 5              THE COURT:  Yeah.  I mean -- okay.  That's -- that's
 6  fine.  So that's your position; you don't think you have a
 7  prosecutable case.
 8              MS. WALSH:  That's correct.
 9              THE COURT:  Okay.  Well, your -- I believe, under
10  the existing case law, you have the ability -- you have the
11  power to have me dismiss a case with prejudice that I can't
12  really stop you from doing -- exercising.  And that's your
13  judgment here.  I normally defer substantially to prosecutorial
14  judgment about prosecutability.
15              I have to say, having sat through the entire trial
16  in this case, I don't have the same assessment of the evidence
17  that you have.  My assessment of the evidence is that the --
18  the weight of the evidence, without this witness, remains
19  overwhelming of guilt.  It's more than a prosecutable case when
20  you discover large amounts of cash, drugs, and guns in a car
21  that the two of them are both in, when you have two other
22  cooperators testifying about what they testified to.  In my
23  judgment, it's an imminently prosecutable case, but that's a --
24  a decision of the prosecutor that's entitled to substantial
25  deference and since you're the one that has to prosecute it,
```

```
 1   you have to make that decision.
 2              But I want to be clear here.  If I grant you the
 3   relief that I am granting you, it's not because I think that
 4   the evidence in front of me suggests that the government
 5   knowingly offered perjured testimony, and it's not because I
 6   think that there is -- that there is -- that it will probably
 7   result in an acquittal if you are forced to try the case
 8   without this -- this particular witness.  I don't -- that's not
 9   my judgment.  I have a contrary judgment.  I believe there's
10   substantial evidence to support a prosecutable case and that it
11   would likely result in a conviction if you retried it as to
12   both defendants.
13              But -- so I'm not making that finding and I'm not
14   making the finding that you knowingly offered perjured
15   testimony because based on the motion, I have no evidence that
16   causes me to conclude that the witness perjured himself.  You
17   say he didn't, and I have no evidence to support the view that
18   you knowingly used perjured testimony.  You say you didn't.
19              So what this really looks like to me is a case where
20   through very effective work, Ms. Brown identified new evidence
21   that might prevent you from using that particular witness at
22   retrial, and that's judged by a different standard and one that
23   I -- it -- we would have to have litigation over to determine
24   whether it could be established or not.
25              I also want to make clear that you want this --
```

these convictions to be dismissed with prejudice.  There's no basis in the record for me to dismiss with prejudice except that you're asking me to do it.  And I think you have the power to ask me to do it and I don't believe under the law that I can really stop you from doing it if that's what you want to do.

So my tentative conclusion here is that I will grant you the relief that you are seeking, but not for the reasons that you state.  In other words, I'm not going to find that there was a knowing use of perjured testimony; I'm not going to find that there was perjured testimony; I'm not going to find that it would likely have resulted in an acquittal; and I conclude that I don't have the power, but for your request that I grant you it, a dismissal with prejudice.  Instead, at most, what the defendants would be entitled to is a new trial.

But I -- I can't make you go ahead with a case that you don't -- that you don't think you want to prosecute.  So that's fine.  And given these circumstances, I think I have no choice but to grant the relief you're requesting, although I'm doing it for different reasons than suggested in your memorandum.

I'll give the defense an opportunity to comment and then you can -- but first let me ask you, did you want to say anything else, Ms. Walsh, about this?

MS. WALSH:  Your Honor, it -- we filed the motion and the way we filed it was that we were just notified -- the

1  reason we're asking it be dismissed with prejudice is -- one of
2  the reasons is to notify the defendants that we're not seeking
3  to retry this and it gives them confidence that the government
4  is not going to retry the matter because we did discuss that
5  within my office and the decision was made not to retry the
6  case.  And, you know, that's the reason we're asking that it --
7  because we don't intend to retry it.
8              THE COURT:  Okay.  So -- but it's important -- the
9  distinction is important because the Court is not finding that
10 your witness committed perjury; the Court is not finding that
11 you knowingly used perjured testimony; and the Court is not
12 finding that the case would likely result in an acquittal on
13 retrial.  I'm not finding any of those things.  And I'm
14 certainly not ordering over your objection a -- a dismissal of
15 the charges with prejudice.
16             Rather, I would be granting all that you're
17 requesting because I think you have the power to compel me to
18 do what you want to do, regardless of your reasons.  So -- and
19 your judgments about prosecutability are entitled to deference
20 and respect.  You're an independent branch of government.  You
21 make the decision whether to go forward or not to go forward.
22 That I have a different view about the strength of your case
23 than you do is of no moment.  What matters is you want not to
24 prosecute it again and I think you have the power to see that
25 your desire is achieved.

            So I do propose to grant the motion, although for different reasons than you have suggested in your motion, and I don't want you to -- anyone to leave this hearing with the understanding that I think -- that I'm -- I believe the appropriate remedy here is dismiss -- vacating the convictions and dismissing the charges with prejudice. That's not my view. That's your view. You have the power to do it, so I'm prepared to go along with it.

            All right. So let me turn to you, Ms. Brown. What, if anything, would you like to say? As I said, my inclination is to grant the relief that is being sought. I commend you for tracking this thing down. I'm really deeply frustrated that I was ever the part -- a part of a case in which the government didn't sufficiently vet its witnesses. This is something that could have been easily identified and it's very troubling to me that it happened and I'm grateful to you for ferreting it out.

            As I said, I believe there's substantial evidence of your client's guilt of these charges, nearly overwhelming evidence, but no one should be forced to spend one day in prison based on false evidence. And this -- the date of this is obviously important when making a credibility assessment about that particular witness and the government has an important responsibility when it brings witnesses into court to ensure that they are testifying truthfully. And I deeply regret that we're in this situation that we're in today.

1     But what else, if anything, do you want to say?
2          MS. BROWN: Really, not much, your Honor. You
3 granted the motion, so I don't think there's much to say. And
4 it probably comes as no surprise to the Court that my client
5 probably doesn't care that much as to the reasoning behind
6 having the case dismissed with prejudice. That's obviously the
7 result. Obviously it's more the Court and the lawyers that
8 care more about the vehicle to getting there.
9          But we did assent to the remedy of dismissal with
10 prejudice and we stand by that, but I really have nothing else
11 to add.
12         THE COURT: All right. And, Ms. Hickey, are you
13 speaking for the other defendant? I -- I -- I'm not sure
14 you're counsel of record in the case.
15         MS. HICKEY: I am not, your Honor. Attorney
16 Rancourt is out of the office this week and, you know, the --
17 this matter was scheduled kind of last minute for the reasons
18 you've already articulated.
19         THE COURT: Yeah.
20         MS. HICKEY: And she said we would assent to it.
21 She asked me to stand in for her.
22         THE COURT: All right. Well, yeah, and I -- again,
23 I apologize to her, but I didn't want another day to go by. I
24 mean, once it's -- I learned about this earlier today and I
25 wanted to act on it immediately because I believe -- I'm going

```
 1   to verify this with Ms. Walsh -- this is -- will result in the
 2   dismissal of all charges against both defendants and would
 3   result in their immediate release.
 4              Am I -- am I right about that, Ms. Walsh?
 5              MS. WALSH:  Yes, your Honor.
 6              THE COURT:  Okay.  Well, let's -- let's get it done.
 7   I will grant the motion, but I think I've been very clear on
 8   the record about my reasons.
 9              Now, I agree with Ms. Brown.  For somebody who's in
10   jail, what matters is do they get out of jail initially.  But I
11   don't want anyone to misunderstand the Court's reasoning or to
12   misrepresent my positions on this matter.
13              I -- I would not -- I would not do this but for
14   the -- the fact that the government is asking me to do it and I
15   believe they have the power, under Article II of the
16   Constitution, to make these kinds of judgments and as an
17   Article III judge, I don't have the power to prevent the
18   government from doing this.
19              So I'm granting the motion and ordering the
20   defendants' immediate release and instructing the United States
21   Attorney's Office to cooperate with the -- Bureau of Prisons
22   immediately or the Marshals Service immediately to make them
23   aware of this oral order which will be entered on the docket as
24   a margin order granting the motion for the reasons set forth at
25   the hearing today and that the Marshals Service should be made
```

1  aware of that order immediately and the defendants should be
2  released.  All right?
3         Is there anything else that you want to say,
4  Ms. Walsh?
5         I think Ms. Walsh may be frozen.
6         MS. WALSH:  I'm incredibly sorry.  I mean, I'm
7  incredibly sorry.  I'm sick to my stomach over it.
8         THE COURT:  Hey, I -- it's not a personal thing.  I
9  understand and I know you're a committed, long-serving,
10 effective prosecutor.  And I don't -- it's not personal at all
11 about it.  I appreciate your acknowledgment that you're sorry
12 about it, though, I do, and I still have tremendous respect for
13 you.
14        It's the -- it's the kind of thing that we're
15 fortunate here in the federal system in the District of
16 New Hampshire in that we have vast resources available to us
17 and the court system, the prosecutors, even the defense
18 attorneys, are much better supported than they are in the state
19 court system where volume is so much higher.  And I think, you
20 know, given the relatively small number of cases that we end up
21 trying in this court, it's really important that we -- we avoid
22 these kinds of things.
23        This has not happened to me in the nearly 30 years
24 that I've been doing this work and I'm -- I'm sorry that I was
25 a part of it.  I really am.  I never wanted to be in a position

```
 1  where anyone served a day in prison because of a case that I
 2  was overseeing that shouldn't have been in prison.  And, you
 3  know, I -- I really am regretful about that myself.
 4          But I appreciate your acknowledgment that it's -- I
 5  know it's serious to you.  And it's not personal.  I have a
 6  high regard for you.
 7          All right.  Anything else from any of the
 8  defendants?
 9          MS. BROWN:  (Shakes head.)
10          THE COURT:  Okay.  Thank you.  That concludes --
11          THE CLERK:  Judge --
12          THE COURT:  Yes.  Yup?
13          THE CLERK:  I've let the parties know that I
14  actually already have an email to the Marshals Service that
15  we're issuing that order and that they should start working on
16  the process of getting them released today.
17          THE COURT:  Great.  And you can enter on the docket
18  motion granted for the reasons set forth at the hearing on this
19  date.  Okay?
20          THE CLERK:  Okay.  Will do.
21          THE COURT:  All right.  Thank you, everybody.  That
22  concludes the hearing.
23          MS. BROWN:  Thank you, your Honor.
24          MS. WALSH:  Thank you.
25          (Proceedings concluded at 2:29 p.m.)
```

C E R T I F I C A T E

    I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 2/14/2       */s/ Liza W. Dubois*
                                    LIZA W. DUBOIS, RMR, CRR